**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERGEANTS BENEVOLENT ASSOCIATION HEALTH AND WELFARE FUND, individually and on behalf of all others similarly situated, | Case No. 17-cv-0980 (JSR) |
| Plaintiff, | ECF Case |
| v. | |
| ACTAVIS ELIZABETH, LLC, ET AL. | |
| Defendants. | |
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES DISTRICT COUNCIL 37 HEALTH & SECURITY PLAN, individually and on behalf of all others similarly situated, | Case No. 17-cv-01039 (JSR) |
| Plaintiff, | ECF Case |
| v. | |
| ACTAVIS ELIZABETH, LLC, ET AL. | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT**
**MOTION TO DISMISS THE END-PAYOR PLAINTIFFS'**
**CONSOLIDATED AMENDED COMPLAINT**

## CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    The Parties ................................................................................................ 2

    B.    The Generic Drug Propranolol .................................................................. 4

    C.    Defendants' Participation in Trade Associations ....................................... 4

    D.    The EPPs' Claims ..................................................................................... 4

ARGUMENT ....................................................................................................................... 7

I.     THE EPPS' SHERMAN ACT CLAIM SHOULD BE DISMISSED .......................... 7

    A.    The EPPs allege no direct evidence of collusion. .................................... 8

    B.    The EPPs fail to allege sufficient circumstantial evidence to support the claim that Defendants agreed to fix the price of Propranolol. ................ 8

    C.    The EPPs particularly fail to plead a plausible conspiracy with respect to Propranolol capsules. .......................................................................... 14

II.    THE EPPS' STATE LAW CLAIMS SHOULD BE DISMISSED ........................... 15

    A.    The EPPs' state law antitrust claims (Count II) should be dismissed for failure to state a claim and lack of standing ......................................... 15

         1.    The EPPs fail to plead the existence of a plausible antitrust conspiracy. .......................................................................... 15

         2.    The EPPs are not "efficient enforcers" to assert their state antitrust claims. ................................................................................... 15

         3.    The EPPs lack Article III standing to assert any state law antitrust claims except under New York law. ..................................... 18

         4.    The EPPs fail to allege intrastate activity required to support their state antitrust claims .................................................................. 19

         5.    The EPPs are barred from asserting antitrust claims as indirect purchasers under Missouri, Illinois, and Hawaii law............................ 20

         6.    The EPPs' claims for damages under Kansas, Mississippi, and Tennessee antitrust law are time-barred as to Propranolol capsules......... 20

B.     The EPPs' state consumer protection law claims (Count III) should be dismissed for lack of standing and failure to state a claim. ............................... 21

     1.     The EPPs lack Article III standing to assert consumer protection claims except under New York law. ....................................................... 21

     2.     The EPPs fail to allege required "deceptive" or "unconscionable" conduct in support of their consumer protection claims. ......................... 22

     3.     The EPPs lack statutory standing under the California, District of Columbia, Hawaii, North Carolina, Vermont, Missouri, Rhode Island, Florida, and North Carolina consumer protection statutes ............ 22

     4.     The EPPs cannot bring indirect purchaser class actions under Montana and South Carolina consumer protection laws. ......................... 23

C.     The EPPs' unjust enrichment claim (Count IV) should be dismissed for failure to state a claim. ........................................................................................ 24

**CONCLUSION** ............................................................................................................. **25**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Durrett*,
  746 So. 2d 316 (Ala. 1999) ........................................................................ App'x

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
  181 F.3d 216 (2d Cir. 1999) ...............................................................................14

*Advanced Tech. Corp. v. Instron, Inc.*,
  925 F. Supp. 2d 170 (D. Mass. 2013) .................................................................13

*AG Acceptance Corp. v. Glinz*,
  684 N.W.2d 632 (N.D. 2004) ...................................................................... App'x

*Associated General Contractors of Cal., Inc. v. California State Council of
  Carpenters*,
  459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).......................................16

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003).................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................. *passim*

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
  985 F. Supp. 2d 612 (S.D.N.Y. 2013)...........................................................7, 14

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011)..................................................................................8

*Byre v. Chamberlain*,
  362 N.W.2d 69 (S.D. 1985) ......................................................................... App'x

*Cannon v. Wells Fargo Bank, N.A.*,
  926 F. Supp. 2d 152 (D.D.C. 2013).............................................................. App'x

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
  996 F.2d 537 (2d Cir. 1993)..........................................................................12, 26

*Carder v. BASF Corp.*,
  No. CIV.A. 021069, 2003 WL 25267524 (Miss. Ch. Nov. 19, 2003)............................ App'x

*Chrysler Capital Corp. v. Century Power Corp.*,
  778 F. Supp. 1260 (S.D.N.Y. 1991)....................................................................24

*Coastal Physician Servs. of Broward Cty., Inc. v. Ortiz*,
    764 So. 2d 7 (Fla. Dist. Ct. App. 1999) ................................................................ App'x

*Conergy AG v. MEMC Elec. Materials, Inc.*,
    651 F. Supp. 2d 51 (S.D.N.Y. 2009) .................................................................... App'x

*Crain v. Debartolo*,
    No. 7:14-CV-29-D, 2015 WL 73961 (E.D.N.C. Jan. 6, 2015) .......................... App'x

*Crouch v. Crompton Corp.*,
    No. 02 CVS 4375, 2004 WL 2414027 (N.C. Super. Oct. 28, 2004) .............. App'x

*Cty. Of Cook v. Philip Morris, Inc.*,
    817 N.E.2d 1039 (Ill. App. 2004) ........................................................................ App'x

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005) ...................................................................................... 17

*Davric Maine Corp. v. Rancourt*,
    216 F.3d 143 (1st Cir. 2000) .............................................................................. App'x

*Donovan v. Digital Equip. Corp.*,
    883 F.Supp. 775 (D.N.H. 1993) ........................................................................ App'x

*Duvall v. Silvers*,
    998 S.W.2d 821 (Mo. Ct. App. 1999) ...................................................................... 20

*Eichenseer v. Madison-Dane County Tavern League, Inc.*,
    308 Wis. 2d 684 (Wis. 2008) .............................................................................. App'x

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
    194 F.3d 505 (4th Cir. 1999) .............................................................................. App'x

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
    No. 09-4050, 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ................................ 11

*Freeman Indus. LLC v. Eastman Chem. Co.*,
    172 S.W.3d 512 (Tenn. 2005) ............................................................................ App'x

*FTC v. Mylan Labs., Inc.*,
    62 F. Supp. 2d 25 (D.D.C. 1999) ...................................................................... App'x

*Garber v. Legg Mason, Inc.*,
    347 F. App'x 665 (2d Cir. 2009) ................................................................................ 6

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
    711 F.3d 68 (2d Cir. 2013) .............................................................................. 16, 17

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) .................................................................................................24

*Haw. Med. Ass'n v. Haw. Med Serv. Ass'n.*,
    148 P.3d 1179 (Haw. 2006) ......................................................................................20

*Hines v. Overstock.com, Inc.*,
    No. 09 CV 991 SJ, 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013) ...........................24

*IBM Corp. v. Platform Sol'ns, Inc.*,
    658 F. Supp. 2d 603 (S.D.N.Y. 2009)......................................................................16

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    12 N.Y.3d 132 (2009) ...............................................................................................24

*Illinois Brick v. Illinois*,
    431 U.S. 720 (1977) ............................................................................................20, 23

*In re Aggrenox Antitrust Litig.*,
    No. 3:14-MD-2516 (SRU), 2016 WL 4204478 (D. Conn. Aug. 9, 2016)................. 22, App'x

*In re Aluminum Warehousing Antitrust Litig.*,
    833 F.3d 151 (2d Cir. 2016).....................................................................................15

*In re Aluminum Warehousing Antitrust Litig.*,
    No. 13-md-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014)...........12, 17

*In re Auto. Parts Antitrust Litig.*,
    No. 12-MD-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013).........................24

*In re Commodity Exch., Inc.*,
    No. 14-MD-2548 (VEC), 2016 WL 5794776 (S.D.N.Y. Oct. 3, 2016) ..................24

*In re Crude Oil Commodity Litig.*,
    No. 06-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) .....................................9

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015)......................... App'x

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)......................................................................22

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................................24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................................ 16, App'x

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)..................................................................7, 11, 12

*In re Elevator Antitrust Litig.*,
    No. 04 CV 1178 (TPG), 2006 WL 1470994 (S.D.N.Y. May 30, 2006)................................14

*In re Flonase Antitrust Litig.*,
    610 F. Supp. 2d 409 (E.D. Pa. 2009) ..................................................18

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...........................................11, 22

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34, 49–50 (E.D.N.Y. 2014) ...........................................18

*In re Lidoderm Antitrust Litig.*,
    103 F. Supp. 3d 1155, 1164-65 (N.D. Cal. 2015) ............................. App'x

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
    No. 14 md 2573, 2016 WL 5794777 (S.D.N.Y. Oct. 3, 2016) ................................12

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ...........................................................10

*In re Niaspan Antitrust Litig.*,
    42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) ......................................18, 20

*In re Refrigerant Compressors Antitrust Litig.*,
    No. 2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)............................ App'x

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ..............................................24

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    64 F. Supp. 3d 665, 700 (E.D. Pa. 2014) ..........................................20

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ......................................... App'x

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009).........................................................18

*In re WellPoint, Inc. Out-Of-Network "UCR" Rates Litig.*,
    903 F. Supp. 2d 880 (N.D. Cal. 2012) ......................................... App'x

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016)....................................................8

*Ireland v. Microsoft Corp.*,
    No. 00CV-201515, 2001 WL 1868946 (Mo. Cir. Ct. Jan. 24, 2001) ....................................23

*Kanne v. Visa U.S.A., Inc.*,
    272 Neb. 489 (Neb. 2006)............................................................................. App'x

*Kent v. R.L. Vallee, Inc.*,
    No. 617-6-15, Cncv, 2016 Vt. Super. LEXIS 12, at *28 (Vt. Super. Ct. May 6,
    2016) .......................................................................................................... App'x

*Knowles v. Visa, USA, Inc.*,
    CV-038-707, 2004 WL 2475284 (Me. Super. Oct. 20, 2004) ......................... App'x

*LaFlamme v. Societe Air France*,
    702 F. Supp. 2d 136 (E.D.N.Y. 2010) ..................................................................12

*Lantec, Inc. v. Novell, Inc.*,
    306 F.3d 1003 (10th Cir. 2002) ..........................................................................15

*Little Caesar Enters. v. Smith*,
    895 F. Supp. 884 (E.D. Mich. 1995)............................................................. App'x

*Loeb Indus. v. Sumitomo Corp.*,
    306 F.3d 469 (7th Cir. 2002) ..............................................................................17

*Mayor & City Council of Balt., Md. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013)........................................................................ *passim*

*Merck & Co. Inc. v. Lyon*,
    941 F. Supp. 1443 (M.D.N.C. 1996) ............................................................ App'x

*Meyers v. Bayer AG*,
    735 N.W.2d 448 (Wis. 2007)....................................................................... App'x

*Minnesota v. Alpine Air Products, Inc.*,
    490 N.W.2d 888 (Minn. 1992)..................................................................... App'x

*Morris v. Wyeth, Inc.*,
    Civil No. 09–0854, 2012 WL 601455 (W.D. La. Feb. 23, 2012)............................6

*Nass–Romero v. Visa U.S.A., Inc.*,
    279 P.3d 772 (N.M. 2012) (New Mexico)..................................................... App'x

*Olstad v. Microsoft Corp.*,
    700 N.W.2d 139 (Wisc. 2005)..................................................................... App'x

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*,
    185 F.3d 957 (9th Cir. 1999) ....................................................................... App'x

viii

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*,
   467 F.3d 283 (2d Cir. 2006)...................................................................16, 17

*Peterson v. Visa U.S.A., Inc.*,
   No. CIV.A. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) (DC)............ App'x

*Rick-Mik Enters. v. Equilon Enters., LLC*,
   532 F.3d 963 (9th Cir. 2008) ...............................................................15, 26

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009)..............................................................10

*Salveson v. JP Morgan Chase & Co.*,
   166 F. Supp. 3d 242, 258-59 (E.D.N.Y. 2016) ........................................... App'x

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) ....................................................... App'x

*Simington v. Lease Fin. Grp., LLC*,
   No. 10 CIV. 6052 KBF, 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) .............................18, 21

*Siti-Sites.com, Inc. v. Verizon Commc'ns, Inc.*,
   No. 10 CIV 3751 DLC, 2010 WL 5392927 (S.D.N.Y. Dec. 29, 2010)................................17

*Smith v. Philip Morris Cos.*,
   50 Kan. App. 2d 535 (Kansas 2014)......................................................... App'x

*Southard v. Visa U.S.A.*
   Inc., 734 N.W.2d 192 (Iowa 2007) ......................................................... App'x

*Sperry v. Crompton Corp.*,
   8 N.Y.3d 204 (2007) ......................................................................... App'x

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...........................................................................18

*Standard Oil Co. of Ky. v. State ex rel. Attorney Gen.*,
   65 So. 468 (Miss. 1914)..................................................................... App'x

*Star Disc. Pharm., Inc. v. MedImpact Healthcare Sys.*,
   2014 WL 4470720 (N.D. Ala. Sept. 10, 2014) .............................................. App'x

*Stark v. Visa U.S.A. Inc.*,
   No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ......................... App'x

*State ex rel. Leech v. Levi Strauss & Co.*,
   No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) ............................... App'x

*Stubhub, Inc. v. Golden State Warriors, LLC,*
    No. C 15-1436 MMC, 2015 WL 6755594 (N.D. Cal. Nov. 5, 2015) .............................. App'x

*Sun Dun, Inc. of Wash. v. Coca-Cola Co.,*
    740 F. Supp. 381 (D. Md. 1990) ................................................................. App'x

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.,*
    738 F. Supp. 2d 505 (D. Del. 2010) ......................................................... 10, 11

*Suture Express, Inc. v. Owens & Minor Distribution, Inc.,*
    No. 12-2760-DDC-KGS, 2016 WL 1377342 (D. Kan. Apr. 7, 2016) ............................ App'x

*TechnoMarine SA v. Giftports, Inc.,*
    758 F.3d 493 (2d Cir. 2014) ........................................................................ 7

*Twombly v. Bell Atl. Corp,*
    425 F.3d 99 (2d Cir. 2005) ............................................................... *passim*

*Vinci v. Waste Mgmt., Inc.,*
    43 Cal. Rptr. 2d 337 (Cal. App. 1995) .................................................. App'x

*Walker v. U-Haul Co. of Mississippi,*
    734 F.2d 1068 (5th Cir.) ...................................................................... App'x

**Statutes**

10 M.R.S. § 1101 ...................................................................................... App'x

Ariz. Rev. Stat. § 44-1412 ......................................................................... App'x

Ark. Code § 4-88-107 ..................................................................................... 22

D.C. Code § 28-3901(a) ......................................................................... 23, App'x

D.C. Code § 28-4515 ................................................................................ App'x

Fla. Stat. § 542.32 .................................................................................. App'x

Haw. Rev. Stat. § 480-2(d) ........................................................................ App'x

Haw. Rev. Stat. § 480-4(a) ........................................................................ App'x

Haw. Rev. Stat. § 480-13.3 ............................................................................. 20

Haw. Rev. Stats § 480-3 ........................................................................... App'x

740 Ill. Comp. Stat. 10/11 ......................................................................... App'x

Iowa Code § 553.2 ..................................................................................... App'x

Kan. Stat. 60-512 ............................................................................. App'x

Minn. Stat. § 325D.54(a) ................................................................. App'x

Miss. Code § 15-1-49 ....................................................................... App'x

Mo. Rev. Stat. § 407.025(1) ..................................................... 23, App'x

Mo. Stat. § 416.141 .......................................................................... App'x

Mont. Code § 30-14-133(1) .....................................................................23

N.C. Gen. Stat. § 75-1 ....................................................................... App'x

N.C. Gen. Stats. § 75-1.1 .........................................................................22

N.D. Cent. Code § 51-08.1-01-02 .................................................. App'x

N.H. Rev. Stat. § 356:14 ................................................................... App'x

N.M. Stat. § 57-1-1 ........................................................................... App'x

N.M. Stat. § 57-1-15 ......................................................................... App'x

N.Y. Gen. Bus. Law § 340(1) .......................................................... App'x

Neb. Rev. Stat. 59-801 ..................................................................... App'x

Neb. Rev. Stat. § 59-829 .................................................................. App'x

Nev. Rev. Stat. § 598A.050 .............................................................. App'x

Nev. Rev. Stat. § 598A.060 .............................................................. App'x

Or. Rev. Stats. § 646.715 ................................................................. App'x

Or. Rev. Stats. § 646.715(2) ............................................................ App'x

R.I. Gen. Laws. § 6-13.1-5.2 ..................................................... 23, App'x

R.I. Gen. Laws § 6-36-2 ................................................................... App'x

R.I. Gen. Laws § 6-36-7(a) .............................................................. App'x

S.C. Code § 39-5-140(a) ..........................................................................23

S.D. Codified Laws § 37-1-3.1 ........................................................ App'x

Tenn.Code § 28–3–105 ..................................................................... App'x

Utah Code § 76-10-3118 .................................................................................. App'x

W.V. Code 47-18-3(a) .................................................................................. App'x

W. Va. Code § 47-18-16 .............................................................................. App'x

## <u>INTRODUCTION</u>

The End-Payor Plaintiffs ("EPPs")—healthcare benefit funds that purportedly reimbursed members' Propranolol purchases—claim that increases in the price of reimbursements for Propranolol capsules in 2013-2014 and Propranolol tablets in 2015-2016 were necessarily the result of a price-fixing conspiracy among Defendants.  Based on these allegations, the EPPs assert an injunctive claim under Section 1 of the Sherman Act as well as a host of other claims under state antitrust, consumer protection, and unjust enrichment law.  None of the EPPs' myriad claims has merit.

The EPPs' antitrust claims suffer from the same defects as the Direct Purchaser Plaintiffs' ("DPP") claims.  The EPPs still fail to plausibly allege the existence of a conspiracy among ***these Defendants*** to fix the price ***for these Propranolol products***.  Unable to allege any direct evidence of conspiracy, the EPPs attempt to bulk up their Complaint with conclusory and legally irrelevant allegations regarding Defendants' participation in routine trade shows and industry events.  Those allegations do not change the calculus.  Given the benefit of every doubt, the EPPs' allegations, at most, support an inference that prices for Propranolol increased based on lawful, independent conduct by Defendants.  Every court to have addressed such allegations has held that they are plainly insufficient to survive a motion to dismiss.

The EPPs' state law claims suffer from a number of additional deficiencies.  First, because the EPPs assert duplicative claims with the DPPs, the EPPs cannot show that they are efficient enforcers of their state law antitrust claims.  Second, the EPPs do not have standing to assert state law claims in states where they are not located and where they have no connection.  Finally, the EPPs do not satisfy the statutory and common law requirements of the various state causes of action they assert.

When all of their conclusory and immaterial allegations are set aside, the EPPs' Complaint relies on nothing more than (1) alleged increased reimbursements for Propranolol, (2) a purported description of the generic pharmaceutical market, (3) attendance by some Defendants (along with their customers) at routine trade shows, and (4) the existence of unrelated investigations and lawsuits regarding different products and predominately different defendants.  But what the EPPs' Complaint lacks is a single well-pled factual allegation that suggests that the EPPs' claim of an unlawful agreement to fix Propranolol prices is plausible rather than merely possible.  Despite having months to investigate their claims, as well as significant third-party discovery from trade associations, the EPPs offer no non-conclusory allegations suggesting that Defendants engaged in any unlawful conspiracy with respect to Propranolol.  The EPPs' Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.    The Parties

Defendants Actavis Elizabeth, LLC ("Actavis"), Teva Pharmaceuticals USA, Inc. ("Teva"), Pliva, Inc. ("Pliva"), Mylan Inc.,[1] Mylan Pharmaceuticals Inc., UDL Laboratories, Inc. ("UDL"), (together with Mylan, Inc. and Mylan Pharmaceuticals Inc., "Mylan"), Par Pharmaceutical, Inc. ("Par"), Qualitest Pharmaceuticals, Inc. ("Qualitest"), Heritage Pharmaceuticals Inc. ("Heritage"), Breckenridge Pharmaceutical, Inc. ("Breckenridge"), and Upsher-Smith Laboratories, Inc. ("Upsher-Smith") (together, "Defendants") are pharmaceutical companies with operations based throughout the country.  Depending on the year, some Defendants made and sold generic Propranolol tablets (while others did not), some Defendants

---

[1] Mylan, Inc. does not sell, market, or distribute pharmaceutical products.

made or sold generic Propranolol capsules (while others did not), and some Defendants made and sold both Propranolol tablets and capsules.  (EPP Compl. ¶¶ 19-31.)[2]

According to the Consolidated Amended Complaint ("EPP Complaint"), Plaintiff American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan ("DC 37") is a "health and welfare benefit plan" with its principal place of business in New York, New York that offers benefits to "New York City's largest public employee union." (*Id.* ¶ 17.)  DC 37 alleges that it "indirectly purchased, paid, and reimbursed for generic Propranolol" taken by its members, but it does not allege that it did so in any state other than New York.  (*Id.*)  Though DC 37 alleges no connection with any state other than New York, it asserts (without further explanation or support) that the generic Propranolol it reimbursed for was "intended for consumption . . . in Alabama, Arizona, California, Florida, Hawaii, Illinois, Iowa, Kansas, Nevada, New York, North Carolina, Rhode Island, and South Carolina." (*Id.*)  Plaintiff Sergeants Benevolent Association Health & Welfare Fund ("Sergeants") provides "health and prescription drug benefits to active and retired New York City Police Department Sergeants and their dependents" and is also located in New York.  Like DC 37, Sergeants does not allege any connection with a state other than New York but alleges that it reimbursed for generic Propranolol "intended for consumption . . . in Arizona, California, Florida, Illinois, Kansas, Maine, Nevada, New Hampshire, New York, North Carolina, South Carolina, Utah, and Vermont." (*Id.* ¶ 18.)  No other states are mentioned in the Complaint.

---

[2] Unless otherwise specified, internal quotations and citations are omitted, and all emphasis has been added.  All references to "EPP Compl." are to the End-Payors' Consolidated Amended Complaint filed on February 24, 2017.  References to "App'x" are to the Appendix of Authorities attached as Exhibit A to the Declaration of Nathan E. Taylor filed herewith.

## B.    The Generic Drug Propranolol

Propranolol is the generic version of the pharmaceutical Inderal.  Propranolol is a beta blocker used to treat heart and circulatory conditions, including tremors, angina, hypertension, and heart rhythm disorders.  (*Id.* ¶ 1.)  Propranolol is sold both as a capsule and as a tablet. Defendants Breckenridge and Upsher-Smith allegedly sold only Propranolol capsules during the alleged class period.  (*Id*. ¶¶ 19, 30-31.)  Defendant Actavis allegedly sold both Propranolol capsules and tablets during the alleged class periods.  (*Id.* ¶ 19.)  And Defendants Mylan, Par, Qualitest, Pliva, Teva, and Heritage allegedly sold only Propranolol tablets during the alleged class period.  (*Id.* ¶¶ 20-29.)[3]

## C.    Defendants' Participation in Trade Associations

The EPPs spend much of their Complaint alleging that Defendants participate in various trade organizations and events.  Some of these trade shows, including meetings of the Generic Pharmaceutical Association, involve generic drug manufacturers as well as "distributors, manufacturers of bulk active pharmaceutical chemicals, and suppliers of other goods and services to the generic industry."  (*Id.* ¶ 42.)  Other trade shows identified in the Complaint, like the National Pharmacy Forum, are organized and sponsored by downstream purchasers of generic pharmaceuticals, including Defendants' customers.  (*Id.* ¶¶ 82-83.)

## D.    The EPPs' Claims

The EPPs purport to represent (1) a class of individuals that indirectly purchased, paid, or reimbursed for generic Propranolol capsules from March 2013 to the present, and (2) a class of

---

[3] The EPPs do not directly allege that Par sold Propranolol tablets.  Rather, they allege that in September 2015 (after both the capsule and tablet conspiracies were purportedly formed), Endo International PLC completed an acquisition of Par and combined its Par and Qualitest business segments. (EPP Compl. ¶ 27.)  The EPPs also do not allege that Heritage sold tablets throughout the alleged class period for Propranolol tablets.  (*Id.* ¶ 29.)

individuals that indirectly purchased, paid, or reimbursed for generic Propranolol tablets from December 2014 to the present.  (*Id.* ¶ 8.)  The crux of the EPPs' claims is that, beginning in March 2013 and December 2014 respectively, the prices for Propranolol capsules and tablets increased "by similar amounts at similar times." (*Id.* ¶¶ 46, 49.)  The EPPs, however, do not rely on data suggesting the actual price charged by Defendants.  Instead, the EPPs cite to NADAC data that is derived from a narrow sampling of certain retail pharmacies who volunteer to provide the averages prices they were charged by downstream wholesalers. (*Id.* ¶ 43 n.3.)  The EPPs also rely on Medicaid reimbursement data which, as reflected in the EPPs' own charts, shows that pricing diverged between the Defendants.  (*Id.*  ¶ 51.)

Though the EPPs allege that the increase in the price for Propranolol resulted from an unlawful agreement between Defendants, the EPPs do not allege any facts suggesting that any Defendant actually agreed to fix the price for Propranolol with any other Defendant.  There is no description of the alleged terms, formation, or operation of any agreement.  Instead, the EPPs only allege that Defendants attended trade association meetings before the alleged price increases.  (*Id.* ¶¶ 69-96.)  The EPPs do not allege any facts about whether Propranolol itself was discussed at those meetings or which Defendants actually discussed Propranolol (or any other drug).  Notably, the EPPs do not allege any actual communication or conversation among Defendants regarding Propranolol or anything else.  Nor do the EPPs identify any individual employed by Defendants who allegedly agreed to fix the price of Propranolol.  Instead, the EPPs rely on entirely conclusory allegations that "[s]enior executives of each Defendant reached agreement and monitored compliance" regarding a "price-fixing cartel that included their generic propranolol capsule and tablet products."  (*Id.* ¶ 42.)  Although the EPPs allege that there is no "benign market explanation" for price increases of Propranolol, (*id.* ¶ 43-44), they ignore

publications showing that by the fall of 2015, market disclosures showed that a shortage of Propranolol tablets was reportedly caused by ingredient scarcity, *i.e.*, a "raw materials issue" and that the FDA downgraded certain suppliers, preventing them from supplying Propranolol.[4]  They also ignore significant changes in supply dynamics, including the exit of Mylan as a manufacturer of Propranolol capsules, which immediately preceded the alleged capsule price increases.  (*Id.* ¶ 48.)

The EPPs also refer to a December 15, 2016 civil suit regarding generic drugs Glyburide and Doxycycline Hyclate DR (the "State AG Action").  (*Id.* ¶ 109.)  The complaint in the State AG Action does not pertain to or mention Propranolol.  Nor are Actavis, Pliva, UDL, Endo, Par, Breckenridge, or Upsher-Smith defendants in the State AG Action.  *Id.*  The EPPs also cite to criminal proceedings pending in the Eastern District of Pennsylvania against solely two former Heritage executives concerning two unrelated products, Glyburide and Doxycycline Hyclate DR.  (*Id.* ¶ 104.)  Neither proceeding pertains to or mentions Propranolol.[5]

---

[4] *See* Am. Soc'y of Health-Sys. Pharmacies, *Current Drug Shortage Bulletin: Propranolol-Hydrochloride Tablets* (July 30, 2015), *available at* https://web.archive.org/web/20150910103007/http://www.ashp.org/menu/DrugShortages/Current Shortages/bulletin.aspx?id=1189; Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, http://www.accessdata.fda.gov/scripts/cder/ob/search_product.cfm (last accessed January 25, 2017) (showing Propranolol suppliers' product downgraded to not therapeutically equivalent); s*ee Morris v. Wyeth, Inc.*, Civil No. 09–0854, 2012 WL 601455, at *5 n.4 (W.D. La. Feb. 23, 2012) (taking judicial notice that the Orange Book "identifies drug products approved on the basis of safety and effectiveness by the FDA"), *aff'd sub nom. Morris v. PLIVA, Inc.*, 713 F.3d 774 (5th Cir. 2013); *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009); *Baur v. Veneman*, 352 F.3d 625, 638 n.12 (2d Cir. 2003).

[5] The EPPs repeat the allegation from the State AG Action that those two Heritage executives, Glazer and Malek, made "a large list" of drugs in 2013 and 2014 to discuss with competitors (EPP Compl. ¶ 110), but the EPPs' allegations of anticompetitive conduct during this time period concern only Propranolol capsules, which Heritage does not sell.  (*Id.* ¶ 29.)

**ARGUMENT**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 616 (S.D.N.Y. 2013). Mere "labels and conclusions" do not satisfy the need for plausible factual allegations, and a complaint may not rely on a "formulaic recitation of the elements of a cause of action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Instead, "the plausibility standard applies only to a complaint's factual allegations" and courts "give no effect at all to legal conclusions couched as factual allegations." *Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013).

**I.     THE EPPS' SHERMAN ACT CLAIM SHOULD BE DISMISSED**

In their First Claim for Relief, the EPPs assert a claim under Section 1 of the Sherman Act seeking solely injunctive relief from Defendants. To state a claim under Section 1 of the Sherman Act, a plaintiff must allege facts supporting a plausible inference that defendants conspired to unreasonably restrain trade. *See Twombly*, 550 U.S. at 556-57. It is "not enough to make allegations of an antitrust conspiracy that are consistent with an unlawful agreement; to be viable, a complaint must contain enough factual matter (taken as true) to suggest that an agreement to engage in anticompetitive conduct was made." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). To plead the existence of such an unlawful agreement, a plaintiff must allege either (1) "direct evidence" of an unlawful agreement, or (2) sufficient parallel conduct and "circumstantial facts supporting the inference that a conspiracy existed." *Citigroup*, 709 F.3d at 136. The EPPs do neither.

7

### A.     The EPPs allege no direct evidence of collusion.

The EPPs do not even attempt to allege direct evidence that Defendants colluded to fix the prices of Propranolol.  Direct evidence of a conspiracy is "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted," *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011), with the "paradigmatic example" being a "recorded phone call in which two competitors agreed to fix prices at a certain level." *Citigroup*, 709 F.3d at 136.  The EPPs allege nothing of the sort.

### B.     The EPPs fail to allege sufficient circumstantial evidence to support the claim that Defendants agreed to fix the price of Propranolol.

Since they are unable to allege any direct evidence of a conspiracy, the EPPs must sufficiently allege that Defendants acted in parallel as well as allege sufficient circumstantial evidence—or "plus factors"—to support an inference that the parallel conduct was the result of an unlawful agreement rather than lawful independent behavior.  *Twombly*, 550 U.S. at 556-57. The EPPs fail in this regard as well.  Even assuming that the EPPs' parallel conduct allegations are sufficient for the purposes of this motion, the EPPs' allegations, at most, support an inference that Defendants acted in accordance with lawful conscious parallelism.  That is not enough.  *See Citigroup*, 709 F.3d at 139 (affirming dismissal of claim because "conscious parallelism . . . is not unlawful in itself"); *see also Twombly*, 550 U.S. at 557 (requiring allegations that suggest parallelism "would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties"); *see also In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 366 n.4 (S.D.N.Y. 2016) ("[C]onscious parallelism in pricing among competitors is not itself unlawful.").

**Defendants' Purported Motive to Conspire.**  Like the DPPs, the EPPs' Complaint relies on the same boilerplate allegations that (1) generic pharmaceuticals are commodity

products that are rigorously regulated, (2) the market for generic drugs is highly concentrated, (3) there are regulatory and manufacturing barriers to entry common to all pharmaceuticals, including Propranolol, and (4) many patients cannot substitute other medications for Propranolol. (EPP Compl. ¶¶ 53-68.)  But the Second Circuit has made clear that allegations that "defendants operate in an oligopolistic market . . . simply restate the (legally insufficient) fact that market behavior is interdependent and characterized by conscious parallelism." *Citigroup*, 709 F.3d at 139.  Such allegations, therefore, are not plus factors suggestive of conspiracy.  *Id.*; *see also In re Crude Oil Commodity Litig.*, No. 06-6677, 2007 WL 1946553, at *8 (S.D.N.Y. June 28, 2007) (a "generalized [profit] motive" that "could be imputed to any corporation with a large market presence in any commodity market, is insufficient to show intent").  Under the EPPs' theory, a purchaser of generic pharmaceuticals would be able to state a plausible antitrust claim any time prices for a generic pharmaceutical increased, since such factors—purportedly ubiquitous of the entire industry—would always be present.  But that is not (and cannot possibly be) the law.

**Price increases purportedly against Defendants' "self-interest."**  The EPPs' also half-heartedly suggest that "it would not be in any manufacturer's self-interest to raise the price of propranolol unless an agreement existed with other manufacturers to raise prices."  (EPP Compl. ¶¶ 97-98.)  But this conclusory assertion relies entirely on the EPPs' say-so and not any supporting facts.  And more importantly, such allegations at most describe the existence of conscious parallelism or "follow-the-leader" pricing, which the Second Circuit and courts around the country have explicitly rejected as a basis to support a claim of conspiracy.

The Second Circuit has recognized that it is "a common reaction of firms in a concentrated market [to] recognize their shared economic interests and their interdependence with respect to price and output decisions" but "[s]uch 'conscious parallelism' . . . is not

unlawful in itself." *Citigroup*, 709 F.3d at 139-40.  Indeed, "[a]n action that would seem against self-interest in a competitive market may just as well reflect market interdependence giving rise to conscious parallelism." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195 (9th Cir. 2015).  Thus, courts have held that "enlightened economic actors may independently and unilaterally choose to adopt and maintain supra-competitive pricing" and such allegations are therefore not sufficient plus factors.  *Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 515 (D. Del. 2010), *order amended on reconsideration*, No. 1:09-CV-00438-LDD, 2010 WL 11470613 (D. Del. Dec. 1, 2010).  Because the EPPs' allegations suggest nothing more than that Defendants acted interdependently or engaged in conscious parallelism, they fall far short of suggesting a plausible conspiracy.  *See Twombly*, 550 U.S. at 554 ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.").

**State AG Action and governmental investigations.**  The EPPs' Complaint also relies on allegations from the State AG Action and the existence of governmental investigations against a subset of Defendants.[6]  (EPP Compl. ¶¶ 99-110.)  But to the extent the EPPs contend that such allegations add plausibility to their conspiracy claims, they are incorrect.  For one, the lion's share of case law assigns no weight whatsoever to such allegations.  *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) ("Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within

---

[6]  Breckenridge is not implicated in any way in the State AG Action or governmental investigations.

the meaning of Fed.R.Civ.P. 12(f).”), *aff'd*, 387 F. App'x 72 (2d Cir. 2010); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (holding that existence of investigations “carries no weight” and is a “non-factor” in “pleading an antitrust conspiracy claim”); *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 118 n.14 (2d Cir. 2005) (holding that congressional investigation was “irrelevant at the pleading stage” because “[a]n allegation that someone has made a similar allegation does not, without more, add anything to the complaint's allegations of fact”), *rev'd on other grounds*, 550 U.S. 544 (2007); *see also Footbridge Ltd. v. Countrywide Home Loans, Inc.*, No. 09-4050, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (“strik[ing] . . . allegations . . . based on pleadings, settlements, and government investigations”).   That is because “the mere occurrence of [an] investigation is equally consistent with Defendants' innocence.” *Superior Offshore Int'l*, 738 F. Supp. 2d at 517.

But more importantly, the EPPs do not allege facts linking the existence of the investigations and unrelated court proceedings to their claims.  Absent such “linkage,” the mere existence of these proceedings and investigations does not add plausibility to the EPPs' conspiracy claim.  *See Elevator*, 502 F.3d at 50-51.   While the EPPs allege that certain Defendants have received subpoenas regarding their generic pharmaceuticals, (EPP Compl. ¶¶ 103), nearly all of the investigations and parallel court proceedings that the EPPs point to do not mention Propranolol at all.[7]  The Second Circuit is clear that allegations of investigations into

---

[7] The EPPs also misconstrue allegations from a November 2016 lawsuit by Heritage against Glazer and Malek, (EPP Compl. ¶ 105), and suggest that Glazer and Malek discussed selling Propranolol at a “high price.”  *Id.*  But what the EPPs ignore is that the Heritage lawsuit was not about Heritage's conduct but rather allegations that Glazer and Malek “secretly arranged *deeply discounted* sales of Heritage products to their dummy corporations” and “then illicitly pocketed the profit that resulted when the transaction's true end-purchaser . . . paid the *market price* for Heritage's products.”  Case No. 3:16-cv-08483, Doc. 1, ¶ 1 (D.N.J. Nov. 10, 2016).   The allegations the EPPs reference pertain to a conversation where Glazer and Malek discussed

unrelated conduct do not support an inference of conspiracy. *Elevator*, 502 F.3d at 50-51 ("Allegations of anticompetitive wrongdoing in Europe—absent any evidence of linkage between such foreign conduct and conduct here—is merely to suggest . . . that 'if it happened there, it could have happened here.'"); *In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 14 md 2573, 2016 WL 5794777, at *16 (S.D.N.Y. Oct. 3, 2016) ("[The] mere fact that regulatory entities are investigating the possibility of similar misconduct . . . is not a 'plus factor.'").

The EPPs' lone allegation that Mylan received a subpoena seeking information about Propranolol (among a group of other generic drugs) does not change the analysis. (EPP Compl. ¶ 103.)   The mere fact that the DOJ is seeking information from one of a large group of Defendants does not lend plausibility to the EPPs' conspiracy claims.

**Defendants' participation in trade associations.**   Finally, the EPPs try to prop up their conspiracy claim by listing several trade association meetings that certain Defendants purportedly attended.   Courts universally recognize that "membership and participation in a trade association alone does not give rise to a plausible inference of illegal agreement."   *LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 148 (E.D.N.Y. 2010); *see also Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 545 (2d Cir. 1993) (a "mere opportunity to conspire" at legitimate meetings will not support an inference that "an illegal combination actually occurred"); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4277510, at *33 (S.D.N.Y. Aug. 29, 2014) (allegation that defendants met and communicated at meetings was "no more than suggestive of potential opportunity to communicate").

---

selling Propranolol through their dummy company at a "high price[]" after secretly acquiring the products from Heritage at a discount without Heritage's consent.

That consideration applies with special force here, where the EPPs do not allege that any Defendant actually discussed Propranolol at these trade association meetings.  The most that the EPPs can muster are allegations that speaker topics at the 2015 National Pharmacy Forum included a speech by a magazine representative regarding "current pricing and spending trends" and "a critique of the rationale for high prices offered by manufacturers."  (EPP Compl. ¶ 84.) The EPPs' attempt to cast such topics in a suspicious light fails.  For one, such allegations do not mention Defendants or pricing for generic pharmaceuticals (let alone Propranolol).  But more importantly, the EPPs side-step the fact that the National Pharmacy Forum is organized, sponsored, and attended by Defendants' own downstream customers.[8]   Any notion that Defendants had speakers discussing a conspiracy to fix prices for their customers at a forum organized by those very customers simply defies imagination and certainly plausibility.

Additionally, the EPPs' Complaint conspicuously lacks allegations that Defendants actually communicated at these trade association events.  The Second Circuit is clear that to support their conspiracy claims, the EPPs must allege specific communications among Defendants.  *See Citigroup, Inc.*, 709 F.3d at 140 (dismissing plaintiff's complaint, finding reference to two specific emails among three defendants insufficient to allege a "high level" of interfirm communications).  The EPPs offer no such allegations.  Their assertions mere of routine attendance at trade association meetings does not save their claims.  *See Advanced Tech. Corp. v. Instron, Inc.*, 925 F. Supp. 2d 170, 182 (D. Mass. 2013) (holding that allegations did not suggest meetings were "conspiratorial in nature" where they were not "carried out in a furtive

---

[8] EPP Compl. ¶¶ 82-83 (noting that the National Pharmacy Forum was organized by a trade association that "represents group purchasing organizations"); 2015 National Pharmacy Forum, www.supplychainassociation.org,     http://www.supplychainassociation.org/?page=2015Forum2 (last visited March 2, 2017 12:01 PM) (listing group purchasing organizations and other drug purchasers as sponsors).

manner" but instead were a "matter of routine" suggestive of "nothing more than business as usual"); *see also Amazon.com, Inc.*, 985 F. Supp. 2d at 618 (dismissing complaint because plaintiffs' failure to "specify who participated in these hypothetical discussions or agreements . . . falls well short of the line between possibility and plausibility of entitlement to relief").

### C.   The EPPs particularly fail to plead a plausible conspiracy with respect to Propranolol capsules.

The EPPs have not stated a plausible conspiracy claim with respect to any Defendant, but their allegations are particularly deficient with respect to those Defendants who sold Propranolol capsules.  Antitrust plaintiffs must allege facts showing that the defendants, "*in their individual capacities*, consciously committed themselves to a common scheme."  *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999).  But the EPPs' entire claim that Defendants conspired to fix the price of Propranolol capsules rests solely on the allegation that prices purportedly increased for Propranolol capsules and that Actavis, Breckenridge, and Upsher-Smith attended routine trade shows.  Under any view of the law, such allegations cannot be enough to subject these Defendants to antitrust conspiracy claims.  *See In re Elevator Antitrust Litig.*, No. 04 CV 1178 (TPG), 2006 WL 1470994, at *11 (S.D.N.Y. May 30, 2006) ("[T]he allegation that elevator company executives attend trade, industry, or social functions together is clearly insufficient to state a claim.").  And the EPPs' allegations regarding former Heritage executives Malek and Glazer, as well as the Mylan subpoena, are irrelevant as to capsules because neither Heritage nor Mylan sold Propranolol capsules during the alleged price increases.  Thus, while the EPPs' claims against all Defendants should be dismissed, the EPPs' claims against Actavis, Breckenridge, and Upsher-Smith with regard to Propranolol capsules should be dismissed for these additional reasons.

14

## II.     THE EPPS' STATE LAW CLAIMS SHOULD BE DISMISSED

In their Second, Third, and Fourth Claims for Relief, the EPPs assert scattershot claims under the antitrust laws of 29 states and the District of Columbia; the consumer protection statutes of 13 states and the District of Columbia; and include an unspecified claim for unjust enrichment for good measure.  None of these claims has merit.

### A.     The EPPs' state law antitrust claims (Count II) should be dismissed for failure to state a claim and lack of standing.

#### 1.     The EPPs fail to plead the existence of a plausible antitrust conspiracy.

The EPPs' state antitrust claims fail for the same reason as their Sherman Act claims: there are no well-pled allegations plausibly suggesting that Defendants conspired to fix the price of Propranolol.  Indeed, the EPPs plead no additional facts to support their myriad state antitrust law claims, offering no more than the "formulaic recitation of the elements of a cause of action" that the *Twombly* Court warned "would not do" on a motion to dismiss.  550 U.S. at 555.  Every single state under which the EPPs bring an antitrust claim has made clear, either by statute or case law, that decisions of federal courts on Sherman Act claims are either determinative or highly persuasive with respect to their state analogues.  (*See* App'x § 1 (listing authority).)  Unsurprisingly, therefore, courts regularly dismiss state law antitrust claims when dismissing Sherman Act claims based on the same allegations.  *See Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 976 n.5 (9th Cir. 2008) ("[S]tate law antitrust claims are derivative of the federal law claims.  Because the federal claims fail, the state law claims fail."); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003 (10th Cir. 2002) (same).  The result should be the same here.

#### 2.     The EPPs are not "efficient enforcers" to assert their state antitrust claims.

The EPPs also fail to establish antitrust standing.  "[A]ntitrust standing is a threshold, pleading-stage inquiry."  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d

Cir. 2016).  To establish standing, a "private antitrust plaintiff must demonstrate not only injury in fact but both 'antitrust injury' and that the plaintiff would be an 'efficient enforcer' of antitrust claims." *IBM Corp. v. Platform Sol'ns, Inc.,* 658 F. Supp. 2d 603, 609 (S.D.N.Y. 2009).  Since the EPPs do not directly purchase Propranolol from Defendants, but instead, reimburse for downstream Propranolol purchases made by their members, the EPPs cannot show that they are "efficient enforcers" of their antitrust claims.  In deciding whether plaintiffs are efficient enforcers, courts consider: "(1) the directness or indirectness of the asserted injury; (2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them . . . so as to avoid duplicative recoveries." *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 78 (2d Cir. 2013) (citing *Associated General Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 534, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) ("*AGC*")).[9]  The EPPs fail on all four factors.

**First**, the EPPs' alleged injury is particularly indirect, since it relies on multiple levels of upstream purchasers passing on purported overcharges to the EPPs' members.  *See Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 293 (2d Cir. 2006) (holding that an indirect purchaser was not an efficient enforcer where injury was suffered directly by other entities).  **Second**, there is not only a class of persons "potentially inclined" to enforce these

---

[9] At least 18 of the states under which the EPPs raise antitrust claims have expressly incorporated these factors into their state law antitrust claims.  (*See* App'x § 2 (listing authority).)  Moreover, given that the application of state antitrust law mirrors the application of federal antitrust law, (*see id.* § 1), these "*AGC* factors" should also be applied to those states whose courts have neither expressly adopted nor rejected their application: Alabama, Florida, Hawaii, Oregon, Rhode Island, Tennessee, Utah and Vermont.  *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) ("application of the AGC multi-factor test is appropriate" even without state courts having explicitly adopted the test).

claims; a class of purported direct purchasers has already asserted them.   *See id.* at 294 (dismissing indirect purchaser claims where direct purchasers also brought suit); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 444 (2d Cir. 2005) (noting the importance of this factor when plaintiffs sue for both injunctive relief and money damages).   **Third**, the EPPs' injury here is "highly speculative" because it is too far down "the chain of causation."   *Gatt*, 711 F.3d at 78.   To calculate damages for the EPPs, the Court would need to track the purported overcharge downstream from Defendants' direct purchasers, through multiple levels in the distribution chain, to the EPPs, who may have reimbursed some consumers for some portion of their drug costs.   That is not an efficient exercise, especially where, as here, the DPPs can vindicate any interest in enforcing antitrust laws.   *Loeb Indus. v. Sumitomo Corp.*, 306 F.3d 469, 486 (7th Cir. 2002) (moving "further down the chain" of distribution "increase[s] the economic complexity of apportioning damages").   **Fourth**, the risk of duplicative recoveries is present because the DPPs have asserted damages claims for the same purported conduct, and it would be "impossible to apportion damages" between the groups of plaintiffs.   *Paycom*, 467 F.3d at 294. Because the EPPs are not efficient enforcers, they lack antitrust standing to pursue their antitrust claims.[10]

---

[10] The EPPs' Sherman Act claim can be dismissed on similar grounds.  Though the EPPs seek only injunctive relief with respect to their federal claim, these same considerations apply with respect to that claim.  *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4277510, at *39 (S.D.N.Y. Aug. 29, 2014) ("There will always be others who are more directly injured than them, as well as others who will be more efficient enforcers of federal antitrust laws.  That these plaintiffs only request injunctive relief does not . . . eliminate this issue."); *Siti-Sites.com, Inc. v. Verizon Commc'ns, Inc.*, No. 10 CIV 3751 DLC, 2010 WL 5392927, at *3 (S.D.N.Y. Dec. 29, 2010) ("A private plaintiff seeking relief under the antitrust laws, whether it be in the form of damages or injunctive relief, 'must show more than simply an injury causally linked to a particular' violation. . . ."), *aff'd*, 428 F. App'x 100 (2d Cir. 2011).

### 3.     *The EPPs lack Article III standing to assert any state law antitrust claims except under New York law.*

The EPPs' state law claims fail for the independent reason that they lack Article III standing for all but the New York claims.  Both EPPs are New York-based entities, and the Complaint does not allege that they purchased or provided reimbursements for Propranolol in any state other than New York.[11]  That the named Plaintiffs seek class action status adds nothing to the question of Article III standing.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016).  To the contrary, federal courts in New York and elsewhere have repeatedly dismissed state law claims brought by named plaintiffs who neither reside, nor do business, in the states in question.  *See, e.g.*, *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49–50 (E.D.N.Y. 2014) ("[T]he Plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state."); *Simington v. Lease Fin. Grp., LLC*, No. 10 CIV. 6052 KBF, 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ("Plaintiff Zamir, who owns a business in Connecticut, may represent the interests only of purported class members who are business owners or residents of Connecticut.").[12]  The Court should therefore dismiss all state antitrust claims other than those under New York law for lack of Article III standing.

---

[11] The only allegations that relate in any way to purchases in any state other than New York are two conclusory sentences alleging that the EPPs "indirectly purchased, paid, and reimbursed" for Propranolol for union members and their families in some (but certainly not all) of the states. (*See* EPP Compl. ¶¶ 17, 18.)  Notably, however, the Complaint only alleges that the EPPs themselves actually purchased Propranolol in New York. *Id.*

[12]  *See also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (holding that not requiring intrastate conduct at the motion to dismiss stage "would allow named plaintiffs . . . with no injuries in relation to the laws of certain states . . . to embark on lengthy class discovery with respect to injuries in potentially every state in the Union."); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 419 (E.D. Pa. 2009) (dismissing complaint because "[n]amed Plaintiffs cannot establish standing merely by relying on claims of putative class members and must establish their own standing to assert each claim."); *See also In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (same).

####     4.      *The EPPs fail to allege intrastate activity required to support their state antitrust claims.*

The antitrust laws of a number of states—including Alabama, Arizona, Hawaii, Maine, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin (as well as the District of Columbia)—apply only to intrastate activity and/or conduct that specifically impacts consumers of that state—and not to a broadly alleged nationwide conspiracy such as that alleged by the EPPs.  (*See* App'x § 3.)  But for most of those states (Alabama, Arizona, Hawaii, Maine, Minnesota, Mississippi, Nebraska, New Mexico, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, West Virginia, Wisconsin, and the District of Columbia), the EPPs have pled no non-conclusory facts of any price fixing conduct taking place within the state.[13]

Similarly, there are no non-conclusory allegations that the purported price fixing "substantially affected" markets in any of the aforementioned states; indeed, the EPPs do not claim that they actually reimbursed for Propranolol in any jurisdiction other than New York. Thus, the claims under the antitrust laws of Alabama, Arizona, Hawaii, Maine, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Oregon, Rhode

---

[13] Even in the case of New York and Nevada, there are no allegations that price fixing conduct occurred in those states.  At most, the Complaint alleges that the "Total Store Expo" in Las Vegas "provides pharmaceutical industry executives with opportunities to meet with each other and to follow up on key discussions that were initiated during the NACDS Annual Meeting." (EPP Compl. ¶ 74).  The allegations with respect to New York consist of a pair of annual dinners held there, without any allegations of any pricing discussion.  (*Id.* ¶¶ 76, 78).  Those allegations fall far short of alleging price fixing conduct in either state.

Island, South Dakota, Tennessee, Utah, West Virginia, Wisconsin, and the District of Columbia must be dismissed.[14]

> **5.     The EPPs are barred from asserting antitrust claims as indirect
> purchasers under Missouri, Illinois, and Hawaii law.**

By bringing state antitrust law claims, the EPPs seek to avoid the Supreme Court's holding in *Illinois Brick v. Illinois*, which bars indirect purchasers from bringing damages claims under the Sherman Act. *See* 431 U.S. 720, 746 (1977). But Missouri law does not permit indirect purchasers to bring damages claims either. *See Duvall v. Silvers*, 998 S.W.2d 821 (Mo. Ct. App. 1999) (citing *Illinois Brick*, finding indirect purchasers' damage too remote). That claim must therefore be dismissed. Similarly, the antitrust law of Illinois allows only the state's Attorney General to bring antitrust claims on behalf of indirect purchasers. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 700 (E.D. Pa. 2014) ("The Illinois Antitrust Act only permits the state's Attorney General to bring class action on behalf of indirect purchasers."). And Hawaii law requires that the state Attorney General bring or have the opportunity to bring class actions on behalf of indirect purchasers like the EPPs. *See* Haw. Rev. Stat. § 480-13.3; *Haw. Med. Ass'n v. Haw. Med Serv. Ass'n.*, 148 P.3d 1179, 1209 (Haw. 2006) (quoting Hawaii's legislative history). Nowhere does the Complaint allege that the EPPs complied with this procedure.

> **6.     The EPPs' claims for damages under Kansas, Mississippi, and
> Tennessee antitrust law are time-barred as to Propranolol capsules.**

The EPPs' claims with respect to Propranolol capsules accrued with the start of Defendants' alleged price fixing conspiracy in March 2013. (*See* EPP Compl. ¶¶ 1, 8, 111(a),

---

[14] Additionally, Utah law requires "that at least one named plaintiff must be a citizen or resident of Utah in order to seek classwide relief under the Utah Antitrust Act." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 759-60 (E.D. Pa. 2014). Neither of the EPPs are Utah citizens or residents. The Utah antitrust claim must therefore be dismissed.

112(a).).  The EPPs' complaints were filed in January 2017, well over three years later.  Thus, any claim for damages for purchases made more than three years ago are time-barred under the antitrust laws of Kansas, Mississippi and Tennessee, which require that antitrust claims be brought within three years of accrual.  (*See* App'x § 4 (listing sources of statute of limitations).)

**B.**      **The EPPs' state consumer protection law claims (Count III) should be dismissed for lack of standing and failure to state a claim.**

Like their state antitrust law claims, the EPPs plead no additional facts to support their claims that Defendants violated state consumer laws.  Since the EPPs have not plausibly alleged that Defendants engaged in any unlawful conduct with respect to Propranolol, their state consumer protection claims should be dismissed on that basis alone for failure to state a claim.  In addition, the EPPs do not have standing to assert these claims under the law of any state except New York.

**1.**      ***The EPPs lack Article III standing to assert consumer protection claims except under New York law.***

The standing requirement under Article III applies to the consumer protection laws in exactly the same way as it does to the EPPs' state antitrust claims: named plaintiffs only have standing to bring claims under the laws of their own states.  *See Simington*, 2012 WL 651130, at *9 ("Where plaintiffs themselves do not state a claim under their respective state's consumer statutes, however, they do not have standing to bring claims under other state statutes—even where they are named plaintiffs in a purported class action.").  The EPPs only allege that they reimbursed for purchases of Propranolol in New York.  Because the EPPs cannot bring claims under the consumer protection laws of states where they are not based or made any relevant purchase reimbursements, the EPPs' consumer protection claims under states' laws other than New York must be dismissed.

21

### 2. The EPPs fail to allege required "deceptive" or "unconscionable" conduct in support of their consumer protection claims.

The EPPs' New York consumer protection claim cannot survive either.  New York's consumer protection law, as well as the law of several other states, requires that the EPPs allege the existence of "deceptive" or "unconscionable" conduct.  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408-10 (S.D.N.Y. 2011) (holding that indirect purchasers must allege that consumers were deceived to assert consumer protection claims under New York law).[15]  Here, the EPPs have made no non-conclusory allegations suggesting any kind of deception or unconscionable conduct regarding Defendants' consumers.  Instead, the EPPs transparently attempt to "us[e] the consumer-protection law as a surrogate for antitrust law"—and courts are clear that such tactics will not be countenanced.  *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516 (SRU), 2016 WL 4204478, at *7 (D. Conn. Aug. 9, 2016); *Digital Music*, 812 F. Supp. 2d at 408-10 ("failure to disclose participation in a purported antitrust conspiracy" is an insufficient allegation of deception).  Absent plausible allegations that Defendants engaged in some fraud or deception, the EPPs cannot state a claim under the consumer protection laws.

### 3. The EPPs lack statutory standing under the California, District of Columbia, Hawaii, North Carolina, Vermont, Missouri, Rhode Island, Florida, and North Carolina consumer protection statutes.

The EPPs also do not satisfy the statutory standing requirements for their consumer protection claims of several states.  For one, the EPPs' consumer protection claims under

---

[15] *See, e.g.,* Ark. Code § 4-88-107 (requires "deceptive or unconscionable trade practices"); N.C. Gen. Stats. § 75-1.1; *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Cal. 2007) (consumer protection laws of Arkansas, District of Columbia, New Mexico and Rhode Island require unconscionable conduct; price fixing allegations are insufficient; "pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high."); *In re Aggrenox Antitrust Litig.*, 2016 WL 4204478, at *7 (dismissing California, South Carolina, and Vermont consumer protection claims where alleged as surrogates of state antitrust law).

California, the District of Columbia, Hawaii, North Carolina and Vermont law fail because such claims can only be brought by consumers.  (*See* App'x § 5 (listing authority).)  The EPPs are not consumers, but instead reimburse members for Propranolol purchases.  Additionally, the consumer protection statutes of the District of Columbia, Missouri, and Rhode Island provide that the buyer must have purchased or leased "goods or services primarily for personal, family, or household purposes,"  D.C. Code § 28-3901(a); Mo. Rev. Stat. § 407.025(1); R.I. Gen. Laws. § 6-13.1-5.2, which the EPPs—as health benefit plans—obviously cannot allege.  Thus, the EPPs cannot assert these claims as a matter of law.  (*See* App'x § 5 (listing authority).)

Finally, the consumer protection laws of Florida and North Carolina require that a plaintiff allege in-state injury.  (*Id.* (listing authority).)  As discussed in the context of the EPPs' state antitrust claims, *see supra* Section II.A.3, the EPPs do not (and cannot) allege in-state injury in any state other than New York.

### 4.    *The EPPs cannot bring indirect purchaser class actions under Montana and South Carolina consumer protection laws.*

The consumer protection laws of Montana and South Carolina explicitly preclude class actions.[16]  In addition, Missouri law bars indirect purchasers from asserting consumer protection claims as well as antitrust claims.[17]  Therefore, those claims must be dismissed.

---

[16] *See* Mont. Code § 30-14-133(1) (consumers "may bring an individual but not a class action" under Montana Consumer Protection Act); S.C. Code § 39-5-140(a) (a person damaged by violation of South Carolina Unfair Trade Practices Act "may bring an action individually, but not in a representative capacity").

[17] *See Ireland v. Microsoft Corp.*, No. 00CV-201515, 2001 WL 1868946, at *1 (Mo. Cir. Ct. Jan. 24, 2001) ("The court finds that [*Illinois Brick*] is controlling and applicable to plaintiff's claims under the Missouri Antitrust Laws and the Missouri Merchandising Practices Act (MMPA).  It is clear that plaintiff, as an indirect purchaser, lacks standing to sue.").

C. **The EPPs' unjust enrichment claim (Count IV) should be dismissed for failure to state a claim.**

Finally, the EPPs' throwaway unjust enrichment claim fails as a matter of law.  The EPPs purport to claim unjust enrichment on behalf of a nationwide class, but fail to even identify the state laws on which their claim is based.  That deficiency alone warrants dismissal.  *Hines v. Overstock.com, Inc.*, No. 09 CV 991 SJ, 2013 WL 4495667, at *12 (E.D.N.Y. Aug. 19, 2013) ("[T]he failure to cite to the law of a particular state in alleging common law claims deems them so vague that defendant cannot reasonably prepare a response.").[18]

Even assuming that the unjust enrichment claim was brought under New York law, it would fail since the sale and purchase of the drugs in question took place under valid contracts between buyers and sellers.  *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) ("Unjust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the subject matter.").

Finally, the EPPs fail to plead that a "specific and direct benefit" was conveyed by the EPPs to any Defendant as required to state an unjust enrichment claim under New York law.  *See Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516-19 (2012) (where plaintiff and defendant "simply had no dealings with each other," their relationship is "too attenuated" to support an unjust enrichment claim); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) (dismissing unjust enrichment claim where plaintiff did not confer benefit on defendant); *see also In re Commodity Exch., Inc.*, No. 14-MD-2548 (VEC), 2016 WL 5794776, at *29

---

[18] *See also In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612, at *31 (E.D. Mich. June 6, 2013) (indirect purchasers' "failure to identify the unjust enrichment laws of any particular jurisdiction subjects the causes of action to dismissal"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (same); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007) (same).

(S.D.N.Y. Oct. 3, 2016) (dismissing unjust enrichment claim because "Plaintiffs have failed to allege that they had any relevant relationship with the Defendants or that Defendants were enriched at Plaintiffs' expense").

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court grant this motion and dismiss the EPPs' Consolidated Amended Complaint with prejudice.

DATED: New York, New York
       March 7, 2017

KIRKLAND & ELLIS LLP

By: */s/ Jay P. Lefkowitz, P.C.*
Jay P. Lefkowitz., P.C.
Devora W. Allon
Nathan E. Taylor
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
lefkowitz@kirkland.com
devora.allon@kirkland.com
nate.taylor@kirkland.com

*Attorneys for Defendant Upsher-Smith Laboratories, Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Chul Pak*
Chul Pak
Jeffrey C. Bank
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 999-5800
Facsimile:  (212) 999-5899
cpak@wsgr.com
jbank@wsgr.com

*Attorneys for Defendants Mylan Inc., Mylan Pharmaceuticals, Inc. and UDL Laboratories, Inc.*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: */s/  Marc E. Kasowitz*
Marc E. Kasowitz
Hector Torres
Sheron Korpus
Seth Davis
Seth A. Moskowitz
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800
mkasowitz@kasowitz.com
htorres@kasowitz.com
skorpus@kasowitz.com
sdavis@kasowitz.com
smoskowitz@kasowitz.com

*Attorneys for Actavis Elizabeth, LLC, Pliva, Inc. and Teva Pharmaceuticals USA, Inc.*

GIBSON, DUNN & CRUTCHER LLP

By: */s/ D. Jarrett Arp*
D. Jarrett Arp (admitted *pro hac vice*)
Melanie L. Katsur (admitted *pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9527
jarp@gibsondunn.com
mkatsur@gibsondunn.com

Indraneel Sur
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 716-0875
isur@gibsondunn.com

*Attorneys for Defendant Heritage
Pharmaceuticals Inc.*

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Stacey Anne Mahoney*
Stacey Anne Mahoney
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
stacey.mahoney@morganlewis.com

R. Brendan Fee (admitted *pro hac vice*)
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
brendan.fee@morganlewis.com

*Attorneys for Defendant Breckenridge
Pharmaceutical, Inc.*

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (admitted *pro hac vice*)
Sarah F. Teich (admitted *pro hac vice*)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
steich@wc.com

*Attorneys for Defendant Par Pharmaceutical,
Inc.*